UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| CNY FAIR HOUSING, INC., | Case No. **5:22-cv-1168 (BKS/ML)** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| PEREGRINE SENIOR LIVING, LLC | **BENCH TRIAL DEMANDED** |
| *Defendant.* | |

---

Plaintiff CNY Fair Housing Center, Inc. ("Plaintiff"), by and through its undersigned counsel, EISENBERG & BAUM, LLP, for its Complaint against Peregrine Senior Living, LLC. ("Defendant") alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff is CNY Fair Housing, Inc. ("CNY Fair Housing"), a non-profit organization committed to ensuring that all people, including deaf individuals, have equal access to housing in Central and Northern New York.

2. At all times relevant to this action Defendant owns, operate, and/or managed an assisted living facilities in Northern New York. Defendant discriminated against both current and prospective deaf residents by refusing to provide auxiliary aids and services necessary for effective communication and equal access to Defendant's services.

3. American Sign Language ("ASL") is a visual, three-dimensional, non-linear language, and its grammar and syntax differ from the grammar and syntax of English and other spoken languages. ASL is best thought of as a foreign language used by American deaf people, with its own grammar and syntax. Deaf individuals are often educated in Deaf schools and grow up in culturally Deaf environments. As a result of both physical and environmental factors, deaf individuals frequently

have great difficulty achieving command of spoken or written English. From a pedagogical standpoint, for example, it is difficult to understand how English works if a person has never heard it. However, deaf individuals are often able to communicate with great complexity in ASL.

4. Accordingly, in assisted living facilities, writing is not an effective means for deaf persons to communicate complex information such as assessments, planning, intake, screening, medical care, recreation, therapy, meetings, and various legal documentation.

5. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only 26% of what is said.

6. For these reasons, ASL interpreters are necessary for the great majority of deaf individuals receiving treatment in assisted living facilities when that care involves complicated information, lengthy communications, or when the individual has other conditions that make treatment or communicating through other means more difficult.

7. CNY Fair Housing used Fair Housing testers ("Testers") to determine whether Defendant's assisted living facilities would supply an ASL interpreter for a deaf resident if requested or necessary. These Testers posed as relatives of deaf persons who were interested in utilizing Defendant's services and programs. When the Testers inquired whether the facilities would provide interpreters for their deaf relatives, they were told that the facilities would not interpreters and do not offer ASL interpretation services.

8. In the context of assisted living facilities, the outright refusal to provide an ASL interpreter will result in ineffective communication for deaf residents. Defendant thus discriminated against

current and prospective deaf residents by failing and/or refusing to provide qualified ASL interpreters or other auxiliary aids and services to ensure effective communication.

9. Plaintiff brings this lawsuit to compel Defendant to cease its unlawful discriminatory practices. Plaintiff seeks declaratory relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful disability discrimination in violation of the Fair Housing Act ("FHA").

## THE PARTIES

10. Plaintiff, CNY FAIR HOUSING, INC., is a private non-profit corporation organized under the laws of New York and registered to do business in New York. Its principal place of business is located in Syracuse, New York. CNY Fair Housing's mission is to ensure fair housing opportunity for all people in Central and Northern New York. Through education, research, advocacy, and enforcement, CNY Fair Housing works to eliminate housing discrimination and promote the creation of open, accessible, and inclusive communities that are diverse in race, gender, and disability.

11. CNY Fair Housing uses "Testers" who pose as prospective renters, home buyers, residents, and the like for the purpose of obtaining information about the conduct of local governments, landlords, real estate agents, companies, and others to determine if housing discrimination is taking place.

12. CNY Fair Housing expended staff time and other resources to investigate and respond to Defendant's discriminatory practices, which diverted resources away from CNY Fair Housing's other activities.

13. Defendant's discriminatory rental practices frustrated CNY Fair Housing's mission to ensure that all people have equal access to housing opportunities by, among other things, making assisted living facilities inaccessible to individuals with disabilities.

14. Defendant PEREGRINE SENIOR LIVING, LLC is the owner, lessor, and/or operator of various assisted living communities including Peregrine Senior Living at Colonie located at 5 S Family Dr., Colonie, NY 1220. Defendant's principle place of business is in Syracuse, NY.

## JURISDICTION & VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendant has sufficient contacts with this District to subject them to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

### CNY Fair Housing's Testing Methods

17. CNY Fair Housing's testing investigation against Defendants involved Testers making telephone calls to Defendants' facilities. Testers, operating under aliases, made inquiries purportedly on behalf of fictional deaf relative(s). Testers gathered preliminary information about Defendants' services and inquired specifically about the availability of auxiliary aids and services, including onsite ASL interpreters, for their deaf relative(s).

18. Audio recordings were made of all contacts between Testers and agents of Defendants

**Factual Allegations Regarding Peregrine Senior Living at Colonie**

Test #1

19. On June 22, 2021, Tester P.H., under an alias, called Peregrine Senior Living at Colonie located at 5 S Family Dr., Colonie, NY 12205 on behalf of his deaf father. Tester P.H. spoke with an employee who, upon information and belief, is named "Amy". Tester P.H. inquired whether Defendant had ASL interpretation services available for its residents. Amy stated, "No we don't". Amy then stated that she would pass the Tester's contact information on the executive director. Tester then again asked if Peregrine had any ASL interpretation services for its residents. Amy reaffirmed that Defendant did not have ASL interpretation services, but had services for blind persons.

Test #2

20. On August 26, 2021, Tester P.H., under an alias, called Peregrine Senior Living at Colonie located at 5 S Family Dr, Colonie, NY 12205 on behalf of his deaf father. Tester P.H. spoke to an employee, upon information and belief, is named "Cora." Tester P.H. asked if the facility would be able to provide her deaf relative with an ASL interpreter during important communications like filling out legal or medical documents and for recreational activities. In response, Cora stated that she will ask someone about getting an ASL interpreter. She then placed the tester on hold to speak with the facility's executive director. Subsequently, Cora took the tester off of hold and stated that she spoke to the executive director who informed her that "the ASL thing, we cannot do it". Cora then suggested that Tester P.H. visit the "Salvation for the Blind and Deaf" because they may be able to assist Tester.

**Factual Allegations regarding Peregrine Senior Living, LLC**

21. Upon information and belief, at all times relevant to this action, Defendant owned, oversaw, managed, licensed, and/or operated Peregrine Senior Living at Colonie located at 5 S Family Dr., Colonie, NY 12205.

22. Upon information and belief, Defendant had significant control of the operations of Peregrine Senior Living at Colonie, including but not limited to implementing policies and procedures regarding accommodations for persons with disabilities and related employee training.

23. Upon information and belief, Peregrine Senior Living Communities, Inc. failed to implement policies and procedures regarding reasonable accommodations for deaf individuals.

24. Upon information and belief, Peregrine Senior Living, LLC failed to adequately train their employees on how to reasonably accommodate deaf individuals receiving services at their senior living community.

## COUNT I: VIOLATIONS OF THE FAIR HOUSING ACT

25. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

26. This action is brought to enforce of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq*.

27. At all times relevant to this action, Defendant owned, operated and/or leased dwellings within the meaning of U.S.C. § 3602(b), which includes "any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families."

28. The FHA provides that it is illegal "to discriminate against any person in the terms, conditions, privileges of sale or rental of a dwelling or in the provision of services or facilities in connection with such dwelling," because of disability. 42 U.S.C. § 3604(f)(2).

29. Under the FHA, discrimination includes "a refusal to make reasonable accommodations in rules, polices, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

30. Under the FHA, it is unlawful to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c).

31. As described above, Defendant violated the FHA by, inter alia, refusing Plaintiff's Testers' reasonable accommodation request of a qualified ASL interpreter for their deaf family members that would allow equal access and opportunity to use and enjoy Defendants' dwelling and services, which equally situated hearing residents are able to enjoy.

32. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i), has been injured as a result of Defendant's discriminatory conduct, and has suffered damages, including diversion of resources and frustration of mission.

33. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the FHA, 42 U.S.C. § 3613(c).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have discriminated in violation of the FHA.

  b. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendant's facilities, services or programs;

  c. Order Defendant:

    i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination of failing to provide effective communication against deaf or hard of hearing individuals;

    ii. to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendant;

    iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendant will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendant will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

    iv. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing individuals are able to communicate through the most appropriate method under the circumstances;

    v. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

    vi. to train all their employees, staff, and other agents on a regular basis about

    the rights of individuals who are deaf or hard of hearing under the FHA.

 vii. to train all their employees, staff, and other agents on a regular basis about Defendant's policy regarding how to obtain interpreters when reasonably requested by deaf or hard of hearing individuals; and

 viii. to implement a program of testing Defendant's employees, staff, and other agents to determine whether they are complying with the requirements of the FHA.

d. Award to Plaintiff:

 i. Compensatory damages pursuant to the FHA;

 ii. Punitive damages pursuant to the FHA;

 iii. Reasonable costs and attorneys' fees pursuant to the FHA;

 iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

 v. Any and all other relief, including nominal damages, that this Court finds necessary and appropriate.

Dated: November 7, 2022

            Respectfully submitted,

            By:

            _____
            Andrew Rozynski, Esq.
            EISENBERG & BAUM, LLP
            24 Union Square East, Penthouse
            New York, NY 10003
            Main: (212) 353-8700
            Fax: (917) 591-2875
            Email: arozynski@eandblaw.com